**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM J. FISCHER, JR.,<br>and LORI L. FISCHER,<br><br>*Plaintiffs*,<br>v.<br><br>CITIBANK, N.A.,<br><br>*Defendant*. | Civil Action No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, William J. Fischer, Jr., and Lori L. Fischer (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby file this Complaint against Defendant, Citibank, N.A., and allege as follows:

## PARTIES

1. Plaintiff, William J. Fischer, Jr. ("Bill Fischer"), is an individual and resident of the state of North Carolina and is otherwise *sui juris*.

2. Plaintiff, Lori L. Fischer ("Lori Fischer"), is an individual and resident of the state of North Carolina and is otherwise *sui juris*.

3. Defendant, Citibank, N.A. ("Citibank"), is a national banking association organized under the laws of the United States with its main office located at 5800 S Corporate Place, Sioux Falls, South Dakota 57108.

4. Citibank has over 660 branch locations throughout the United States, including 209 in the state of New York.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs and Defendant and the amount in controversy exceeds $250,000.00, exclusive of interest, costs, attorneys' fees, special damages, and punitive damages.

6. Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Citibank pursuant to Federal Rule of Civil Procedure 4 and: (1) N.Y. C.P.L.R. § 301 (McKinney 2024), because Citibank engages in business in New York not occasionally or casually, but with fair measure of permanence and continuity; and (2) N.Y. C.P.L.R. § 302(a)(1) (McKinney 2024), because Citibank transacts business within the state of New York or contracts to supply goods or services in the state of New York.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

9. All conditions precedent to the institution of this action have occurred, been waived, or otherwise been excused.

10. Plaintiffs have retained the undersigned law firm to represent them in this action and have agreed and obligated themselves to pay the firm its reasonable attorneys' fees incurred in connection with same.

## FACTUAL ALLEGATIONS

11. At all times material to this action, Plaintiffs maintained an account with TD Bank, N.A. ("TD Bank"), ending **9416** (the "Account").

12. In May of 2023, Plaintiffs were in the process of closing on a home in North Carolina, which involved, *inter alia*, the following non-parties: (1) Costal Financial Services of ENC, LLC, d/b/a Motto Mortgage Costal Connection ("Motto Mortgage"); and (2) The Wortman Law Firm, PLLC (the "Law Firm"). More specifically, Motto Mortgage was financing Plaintiffs' purchase of the home, and the Law Firm was serving as the closing agent/attorney.

13. On or about May 18, 2023, Plaintiffs received fraudulent wire instructions from an unknown cyber-criminal purporting to be a lead processor with Motto Mortgage, as part of a fraudulent scheme to steal over $250,000.00 from Plaintiffs' Account. A true and correct copy of the fraudulent wire instructions are attached hereto as "**Exhibit A**."

14. As part of this fraudulent scheme, the wrongdoer opened and maintained a fraudulent bank account at Citibank ending **6783** purportedly in the name of "Smith Consulting" (the "Fraudulent Account").

15. Citibank's customer, Smith Consulting, falsely represented to Plaintiffs that the account number provided was for the Law Firm's trust account at Citibank's branch located at 1600 Coral Way, Miami, FL 33145.

16. However, the account number provided to Plaintiffs as part of the fraudulent scheme, which ended in **6783**, was not in fact the account of (nor was it known to or controlled by) Smith Consulting, who was the intended beneficiary of the funds transfers to be sent by Plaintiffs.

17. In fact, the Fraudulent Account was not even at Citibank branch in the New York City, New York, as opposed to Citibank's branch in Miami, Florida, as the fraudulent instructions suggested.

18. On May 18, 2023, Lori Fischer, via Plaintiffs' TD Bank Account, sent a wire transfer—that specifically named "Smith Consulting" as the beneficiary of the wire transfer—to the Fraudulent Account at Citibank in the amount of $252,780.90. A true and correct copy of the wire transfer form reflecting this wire transfer is attached hereto as "**Exhibit B**."

19. However, Defendant, Citibank, failed to act on the mismatch between the name of the beneficiary of the funds transfer and the name of the owner of the account designated on the funds transfer to receive the funds and did nothing to reject the funds transfer or freeze or hold the funds transfer until the mismatch could be investigated or resolved.

20. Similarly, on May 22, 2023, Lori Fischer, via Plaintiffs' TD Bank Account, sent another wire transfer—that specifically named "Smith Consulting" as the beneficiary of the wire transfer—to the Fraudulent Account at Citibank in the amount of $8,235.21. A true and correct copy of the wire transfer form reflecting this wire transfer is attached hereto as "**Exhibit C**."

21. However, Defendant, Citibank, failed to act on the mismatch between the name of the beneficiary of the funds transfer and the name of the owner of the account designated on the funds transfer to receive the funds and did nothing to reject the funds transfer or freeze or hold the funds transfer until the mismatch could be investigated or resolved.

22. On or about May 23, 2023, Plaintiffs became aware of the fraud and immediately contacted, *inter alia*, TD Bank and the Shallotte, North Carolina, Police Department ("Shallotte PD"), and informed them of same.

23. Importantly, on May 24, 2023, Shallotte PD contacted Citibank in connection with their investigation into the fraudulent wire transfers at issue. That same day, Citibank contacted Shallotte PD to inform them that: (1) a large sum of the funds that were wired by Plaintiffs were still in the Fraudulent Account; (2) Citibank had flagged the Fraudulent Account and froze the funds therein; and (3) Citibank would return to funds remaining in the Fraudulent Account to Plaintiffs. A true and correct copy of the Shallotte PD police report reflecting Citibank's representations is attached hereto as "**Exhibit D**."

24. Additionally, that same day, May 23, 2023, TD Bank submitted a recall request to Citibank for the wire transfers sent by Plaintiffs. A true and correct copy of an email from TD Bank reflecting that a recall request was submitted is attached hereto as "**Exhibit E**."

25. However, on or about May 26, 2023, days after Shallotte PD informed Plaintiffs that the Fraudulent Account had been flagged and the funds therein frozen,

Citibank inexplicably permitted the fraudster(s) to deplete the funds in the Fraudulent Account via cashier's check.

26. Citibank never even questioned the activity in the account of Smith Consulting or the funds transfers into the account of Smith Consulting, although, on information and belief, Citibank has the technology, systems, and ability to compare on an automated basis the name of the beneficiary on a fund transfer with the name of the owner of the account number designated to receive the fund transfer in order to detect name mismatches and, consequently, potentially fraudulent incoming funds transfers.

27. At the time of receiving and wrongfully accepting the funds transfers from Plaintiffs on May 18, 2023, and May 22, 2023, Citibank knew and could easily ascertain on an automated basis from the information contained in the incoming funds transfers and from its internal deposit account records that the name of the beneficiary of the funds transfer and the account number given for the beneficiary on the funds transfers referred to different parties.

28. Defendant, Citibank, received and improperly accepted $261,016.11 transferred from Plaintiffs into the account of "Smith Consulting," notwithstanding the obvious discrepancy between the name of the intended beneficiary, the account number of the intended beneficiary, and the name of the actual account owner of the account designated to receive the funds.

29. To make matters worse, Citibank permitted an unknown person to withdraw funds from the Fraudulent Account even though Citibank flagged the

Fraudulent Account as suspicious and purportedly froze the funds transferred by Plaintiffs.

30. Citibank flagged these transactions and the Fraudulent Account as suspicious because it had actual knowledge that the recipient's account belonged to somebody other than the intended beneficiary.

31. Citibank knew that it failed to engage in sufficient Know your Customer ("KYC") due diligence. Further, Citibank either failed to check the account holder's credentials, or knowingly accepted fake credentials.

32. Further, Citibank had knowledge because it flagged the transactions. Although Citibank flagged these transactions as suspicious, it admits that it nonetheless processed the transactions and permitted the fraudster(s) to deplete the Fraudulent Account.

33. At all material times, Citibank acted in bad faith and with willful blindness by crediting the amounts of the funds transfers to the account number designated on the funds transfers and permitted the Fraudulent Account to be depleted notwithstanding: (1) Citibank's actual knowledge that the name of the beneficiary on the funds transfers was not the owner of the account designated to receive the funds transfers; (2) Citibank wrongfully, willfully and intentionally not comparing the name of the beneficiary of the funds transfer to the name of the owner of the account notwithstanding it had the systems and technical ability to do so on an automated basis; (3) Citibank intentionally closing its eyes (willful blindness) to the information contained in its own internal systems that the name of the beneficiary did not match

the name of the owner of the account designated to receive the funds; and (4) misrepresenting to Shallotte PD that the Fraudulent Account had been flagged, the funds therein had been frozen, and that Citibank would return the funds to Plaintiffs.

34. As a result of Citibank's acts, omissions, and failures, Plaintiffs have suffered damages, including the loss of the transferred funds and other damages relating thereto.

35. Banks have relied on the antiquated language of Article 4-A-207 to avoid liability for losses of the type suffered by Plaintiffs when considering the substantial advancements in technology, banks can now easily, almost instantly, and automatically verify or flag whether the name of the beneficiary and the owner of the account designated to receive funds on payment orders belong to the same person without the need for manual review by an employee and can take action to reject the funds transfer, freeze the funds in the account designated to receive the funds, or both.

36. In fact, Defendant, Citibank, implements automated technology that checks whether the name of a payee matches the account number of the payee at the beneficiary bank. Given that Citibank has the technology and systems to match the name of the beneficiary to the name of the account owner prior to the execution of a funds transfer, then Citibank has the ability to match the name of the beneficiary on an incoming funds transfer to the name of the owner of the account at Citibank designated in the funds transfer to receive the funds.

37. According to the Federal Bureau of Investigation ("FBI") on Business Email Compromise ("BEC") and Real Estate Wire Fraud, BEC's, as the one Plaintiffs

have suffered from, are "one of the fastest growing, most financially damaging internet-enabled crimes. It is a major threat to the global economy. In 2021, the Internet Crime Complaint Center (IC3) received BEC related complaints with claimed losses exceeding $2.4 billion. For context, the IC3 found yearly losses attributable to BEC actors were $360 million in calendar year 2016."[1]

38. In light of the billions of dollars citizens, like Plaintiffs, are losing to Business Email Compromises, it is imminent that courts enforce this legal obligation pursuant to N.Y. U.C.C. Law § 4-A-207 (McKinney 2024) on banks, such as Defendant, Citibank, given the statutory intent and the advancements and sophistication in bank systems and technology since 1989, when Article 4-A of the Uniform Commercial Code (Funds Transfers) was first proposed to the states for adoption (New York adopted Article 4A in 1990, which became effective January 1, 1991).

39. The FBI even recommended to Congress that "UCC 4A-207 be redrafted to require banks to properly identify the name and number of the beneficiary and to determine they are in fact the same individual or entity."[2]

**COUNT I**
**VIOLATIONS OF N.Y. U.C.C. LAW § 4-A-207**

40. Plaintiffs re-allege and incorporate by reference paragraphs 1-39 above, as if fully set forth herein.

---

[1] Business Email Compromise and Real Estate Wire Fraud, FBI (2022).
[2] *Id.* at 11.

41. Defendant, Citibank, breached its obligation pursuant to N.Y. U.C.C. Law § 4-A-207 (McKenney 2024) when it failed to act on the fraudulent wire transfer on May 18, 2023, even though it had knowledge that the stated beneficiary in the transactions it received from Plaintiffs did not match the account number referenced.

42. Defendant, Citibank, breached its obligation pursuant to N.Y. U.C.C. Law § 4-A-207 (McKenney 2024) when it failed to act on the fraudulent wire transfer on May 22, 2023, even though it had knowledge that the stated beneficiary in the transactions it received from Plaintiffs did not match the account number referenced.

43. The Uniform Commercial Code's ("UCC") relevant banking statute, in particular § 4-A-207, as adopted by the State of New York in N.Y. U.C.C. Law § 4-A-207, provides, in relevant part, the following:

> (2) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (a) Except as otherwise provided in subsection (3), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> **(b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.**

N.Y. U.C.C. Law § 4-A-207 (McKinney 2024) (emphasis added).

44. Defendant, Citibank, had actual and constructive knowledge of the obvious disparity between the name of the beneficiary on Plaintiffs' funds transfers and that Smith Consulting was not the owner of the account designated to receive the funds transfer when it processed Plaintiffs' transfer transactions.

45. Given that Defendant, Citibank, opened and maintained the Fraudulent Account in the name of the fraudster, Smith Consulting, Citibank had knowledge of the information contained in its own records and that account number ending **6783** referred to a person or entity other than Smith Consulting.

46. Defendant, Citibank, breached its obligation pursuant to N.Y. U.C.C. Law § 4-A-207 when it processed the fraudulent transfers on May 18, 2023, and May 22, 2023, from Plaintiffs Account, despite having actual knowledge of the glaring discrepancy between the owner of the account designated to receive the funds and the name of the designated beneficiary.

47. Citibank's breaches were the direct and proximate cause of Plaintiffs' damages.

48. These various breaches of the Citibank's duties caused Plaintiffs significant damages as set out herein.

49. Plaintiffs are entitled to compensatory damages of $261,065.00, plus pre-judgment and post-judgment interest at the statutory rate, attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349, and costs of suit, and any and all other relief this Court deems just and appropriate.

## COUNT II
## COMMON LAW NEGLIGENCE

50. Plaintiffs re-allege and incorporate by reference paragraphs 1-39 above, as if fully set forth herein.

51. By undertaking to flag the Fraudulent Account, freeze the funds in the Fraudulent Account, and return the transferred funds to Plaintiffs, Citibank voluntarily assumed duties to Plaintiffs.

52. By releasing the funds subsequent to being notified that the transfers were fraudulent and representing to Plaintiffs that the funds had been frozen and would be returned to Plaintiffs, Citibank failed to exercise reasonable care and failed to act carefully with respect to the duties it voluntarily assumed.

53. Citibank's conduct placed Plaintiffs in a more vulnerable position than had Citibank done nothing (*i.e.*, had Citibank not assured the Plaintiffs that the funds would be returned to their Account). Indeed, these failures to act reasonably and carefully with regard to duties voluntarily assumed resulted in all of Plaintiffs' losses.

54. As a direct and proximate result of Citibank's conduct, Plaintiffs have suffered actual damages, including, but not limited to, past and future monetary loss, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, William J. Fischer, Jr., and Lori L. Fischer, demand judgment in their favor against Defendant, Citibank, N.A., for the following:

a. awarding Plaintiffs all actual damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

b. any such other and further relief, including equitable relief, as the Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable under applicable state and/or federal law.

Dated: July 15, 2025.

Respectfully submitted,

PALMIERI LAW PC

By: */s/ Vito Palmieri*

Vito A. Palmieri
NY Bar # 2324556
250 Mineola Blvd.
Mineola, NY 11501
(516) 248-9595
Vpalmieri@pallawny.com
*Attorney for Plaintiffs*

-and-

*pro hac vice filing forthcoming*
VERNON LITIGATION GROUP
Bernard C. Carollo, Jr.
3520 Kraft Road, Suite 203
Naples, FL 34105
Telephone: (239) 649-5390
E-mail: Bcarollo@vernonlitigation.com